**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| BRENTON DESGRANGE, Individually and for Others Similarly Situated | **Case No.** _____ |
| v. | Jury Trial Demanded |
| SPARROW HEALTH SYSTEM d/b/a UNIVERSITY OF MICHIGAN HEALTH-SPARROW | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

### SUMMARY

1.      Brenton Desgrange ("Desgrange") brings this collective action to recover unpaid wages and other damages from Sparrow Health System d/b/a University of Michigan Health-Sparrow ("Sparrow").

2.      Desgrange worked for Sparrow as an Emergency Medical Technician ("EMT") in Charlotte, Michigan.

3.      Like the Putative Class Members (as defined below), Desgrange regularly worked more than 40 hours a week.

4.      But Sparrow did not pay them for all their hours worked.

5.      Instead, Sparrow automatically deducted 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

6.      Desgrange and the Putative Class Members were thus not paid for that time.

7.      But Desgrange and the Putative Class Members did not actually receive *bona fide* meal breaks.

8. Instead, Sparrow required Desgrange and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Sparrow continuously subjected them to work interruptions during their unpaid "meal breaks."

9. Sparrow's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") by depriving Desgrange and the Putative Class Members of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over Sparrow because Sparrow is a domestic corporation.

12. Venue is proper because Sparrow is headquartered in Lansing, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Desgrange worked for Sparrow as an EMT in Charlotte, Michigan from approximately October 2017 until April 2022.

14. Throughout his employment, Sparrow classified Desgrange as non-exempt and paid him on an hourly basis.

15. Throughout his employment, Sparrow subjected Desgrange to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

16. But throughout his employment, Desgrange did not actually receive *bona fide* meal breaks.

17. Desgrange brings this action on behalf of himself and other similarly situated hourly, non-exempt Sparrow patient care employees who were subject to Sparrow's automatic meal break deduction policy.

18. Sparrow automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

19. But these employees do not actually receive *bona fide* meal breaks.

20. Thus, Sparrow uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

21. The putative collective of similarly situated employees is defined as:

> **All hourly, non-exempt Sparrow employees who received a meal period deduction at any time during the past 3 years ("Putative Class Members").**

22. Sparrow is a Michigan non-profit corporation that maintains its headquarters in Lansing, Michigan.

23. Sparrow may be served through its registered agent: **John Hyden, 1200 East Michigan Avenue, Suite 600, Lansing, Michigan 48912**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

24. At all relevant times, Sparrow was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, Sparrow was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, Sparrow was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Sparrow, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as

cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

27.    At all relevant times, Sparrow has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28.    At all relevant times, Desgrange and the Putative Class Members were Sparrow's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

29.    At all relevant times, Desgrange and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

30.    Sparrow uniformly deducted 30 minutes a day from Desgrange's and the Putative Class Members' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

31.    As a result, Sparrow failed to pay Desgrange and the Putative Class Members wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

32.    Sparrow's meal break deduction policy, therefore, violates the FLSA by depriving Desgrange and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

33.    Sparrow bills itself as the "8th largest health system in Michigan" with "more than 150 sites of care across Mid-Michigan[,]"[1] including six hospitals.[2]

34.    To meet its business objectives, Sparrow hires patient care workers, including Desgrange and the Putative Class Members, to work in its various healthcare facilities.

---

[1] https://www.sparrow.org/ (last visited September 29, 2023).
[2] *See* https://www.sparrow.org/our-hospitals-services/sparrow-hospitals / (last visited September 29, 2023).

35. Sparrow uniformly classifies these patient care employees (including Desgrange and the Putative Class Members) as non-exempt and pays them on an hourly basis.

36. While exact job titles and precise job duties may differ, these patient care employees are subjected to the same or similar illegal pay practices for similar work.

37. For example, Desgrange worked for Sparrow as an EMT at Sparrow Eaton Hospital in Charlotte, Michigan from approximately October 2017 until April 2022.

38. As an EMT, Desgrange's primary responsibilities included providing direct patient care, such as providing emergency basic life support to patients at the scene and during transport to the hospital, completing initial patient assessments, bandaging, checking vital signs, charting all treatments, responding to emergencies, and generally assisting paramedics and other patient care staff.

39. Throughout his employment, Sparrow classified Desgrange as non-exempt and paid him on an hourly basis.

40. Throughout his employment, Sparrow subjected Desgrange to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

41. But throughout his employment, Desgrange did not actually receive *bona fide* meal breaks.

42. Desgrange and the Putative Class Members perform their jobs under Sparrow's supervision and use materials, equipment, and technology Sparrow approves and supplies.

43. Sparrow requires Desgrange and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

44. At the end of each pay period, Desgrange and the Putative Class Members receive wages from Sparrow that are determined by common systems and methods that Sparrow selects and controls.

45.     Sparrow requires Desgrange and the Putative Class Members to record their hours worked using Sparrow's timeclock system.

46.     Further, Sparrow subjects Desgrange and the Putative Class Members to a common policy and practice of automatically deducting time from their recorded hours worked for meal periods.

47.     Specifically, Sparrow automatically deducts 30 minutes a day from Desgrange's and the Putative Class Members' recorded work time and wages for so-called "meal breaks."

48.     Sparrow automatically deducts this time regardless of whether Desgrange and the Putative Class Members actually receive full, uninterrupted, 30-minute meal breaks.

49.     Sparrow simply assumes Desgrange and the Putative Class Members receive *bona fide* meal breaks each shift they work.

50.     But Desgrange and the Putative Class Members do not actually receive *bona fide* meal breaks.

51.     Instead, Sparrow requires Desgrange and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

52.     And Sparrow continuously subjects Desgrange and the Putative Class Members to work interruptions during their unpaid meal periods.

53.     In fact, even when Desgrange and the Putative Class Members attempt to take a meal break, Sparrow requires them to carry a work cellphone so Sparrow can contact them and instruct them to immediately return to work at any time (including during their unpaid "meal breaks").

54.     Because of these constant work interruptions, Desgrange and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

55.     Rather, during their unpaid "meal breaks," Desgrange and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

56.     Thus, Desgrange and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Sparrow's—not these employees'—predominant benefit.

57.     This unpaid time is compensable under the FLSA because Sparrow knew, or should have known, that (1) Desgrange and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on Sparrow's premises or under Sparrow's supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for Sparrow's predominant benefit.

58.     Sparrow fails to exercise its duty as Desgrange's and the Putative Class Members' employer to ensure these employees are not performing work that Sparrow does not want performed during their unpaid "meal breaks."

59.     And Sparrow knows Desgrange and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Sparrow expects and requires these employees to do so.

60.     In fact, Desgrange and the Putative Class Members repeatedly complained to Sparrow's management and their supervisors about being forced to work during their unpaid "meal breaks."

61.     Thus, Sparrow requested, suffered, permitted, or allowed Desgrange and the Putative Class Members to work during their unpaid "meal breaks."

62.     Despite accepting the benefits, Sparrow does not pay Desgrange and the Putative Class Members for the compensable work they perform during their automatically deducted "meal breaks."

63.     Thus, under Sparrow's uniform automatic meal break deduction policy, Desgrange and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA.

64.     In addition to excluding time from these employees' wages for "meal breaks," Sparrow also uniformly subjects Desgrange and the Putative Class Members to its automatic rounding policy.

65.     Specifically, Sparrow automatically rounds Desgrange's and the Putative Class Members' recorded time punches to the nearest quarter hour in 7-minute increments for Sparrow's—not these employees'—primary benefit.

66.     In fact, in conjunction with Sparrow's automatic rounding policy, Sparrow also prohibits Desgrange and the Putative Class Members from clocking in and out for their shifts within more than 7 minutes of their scheduled shift start and end times.

67.     By enforcing these policies together, Sparrow ensures its automatic rounding policy *always* benefits Sparrow—and *never* benefits Desgrange and the Putative Class Members.

68.     Thus, under Sparrow's uniform automatic rounding policy, Desgrange and the Putative Class Members are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours in violation of the FLSA.

69.     Desgrange worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

70.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

71.     Indeed, Desgrange and the Putative Class Members typically worked 12-hour shifts for at least 4 days a week (or 48 hours).

72. And Desgrange and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks to complete their patient care job duties and responsibilities for Sparrow's predominate benefit.

73. As a result, Desgrange and the Putative Class Members routinely work more than 40 hours in a typical workweek.

74. When Desgrange and the Putative Class Members work more than 40 hours in a workweek, Sparrow does not pay them overtime wages for all overtime hours worked because Sparrow fails to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

75. Desgrange incorporates all other paragraphs by reference.

76. Desgrange brings his claims as a collective action on behalf of himself and the Putative Class Members.

77. The Putative Class Members were victimized by Sparrow's automatic meal break deduction policy, which is in willful violation of the FLSA.

78. Other Putative Class Members worked with Desgrange and indicated they were paid in the same manner, performed similar work, and were subject to Sparrow's same automatic meal break deduction policy.

79. Based on his experience with Sparrow, Desgrange is aware Sparrow's illegal practices were imposed on the Putative Class Members.

80. The Putative Class Members are similarly situated in all relevant respects.

81. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

82.     Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent collective treatment.

83.     Rather, the putative collective is held together by Sparrow's uniform automatic meal break deduction policy, which systematically deprived Desgrange and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek.

84.     Sparrow's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

85.     Sparrow's records reflect the number of hours the Putative Class Members recorded they worked each week.

86.     Sparrow's records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

87.     Likewise, Sparrow's records show the specific times the Putative Class Members punched in and out for their shifts.

88.     And Sparrow's records show that it automatically rounded the Putative Class Members' recorded time punches to the nearest quarter hour.

89.     The back wages owed to Desgrange and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

90.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Sparrow's records, and there is no detraction from the common nucleus of liability facts.

91.     Therefore, the issue of damages does not preclude collective treatment.

92.     Desgrange's experiences are therefore typical of the experiences of the Putative Class Members.

93.     Desgrange has no interest contrary to, or in conflict with, the Putative Class Members.

94.     Like each Putative Class Member, Desgrange has an interest in obtaining the unpaid wages owed to them under federal law.

95.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96.     Absent this collective action, many Putative Class Members likely will not obtain redress for their injuries, and Sparrow will reap the unjust benefits of violating the FLSA.

97.     Further, even if some of the Putative Class Members could afford individual litigation against Sparrow, it would be unduly burdensome to the judicial system.

98.     Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

99.     The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

100.    Among the common questions of law and fact are:

    a.      Whether Sparrow engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

    b.      Whether Sparrow's automatic meal break deduction policy deprived Desgrange and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

    c.      Whether Sparrow knew, or had reason to know, Desgrange and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid meal breaks in violation of the FLSA;

    d.      Whether Sparrow failed to pay Desgrange and the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks, in violation of the FLSA;

    e.      Whether Sparrow's decision not to pay Desgrange and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

    f.      Whether Sparrow's FLSA violations were willful.

101.    Desgrange knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

102.    As part of its regular business practices, Sparrow intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Desgrange and the Putative Class Members.

103.    Sparrow's illegal meal break deduction policy deprived Desgrange and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

104.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

105.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

106.    Those similarly situated employees are known to Sparrow, are readily identifiable, and can be located through Sparrow's business and personnel records.

**SPARROW'S FLSA VIOLATIONS WERE WILLFUL**
**AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA**

107.    Desgrange incorporates all other paragraphs by reference.

108.    Sparrow knew it was subject to the FLSA's overtime provisions.

109.    Sparrow knew the FLSA required it to pay employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

110.    Sparrow knew the Putative Class Members were non-exempt employees entitled to overtime pay.

111.    Sparrow knew the Putative Class Members were paid on an hourly basis.

112.    Sparrow knew each Putative Class Members worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Sparrow required these employees to record their hours worked using its timeclock system.

113.    Sparrow knew the FLSA required it to pay employees, including the Putative Class Members, for all hours they performed compensable work.

114.    Sparrow knew that, as the Putative Class Members' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Sparrow did not want performed.

115.    Sparrow knew it failed to provide the Putative Class Members with *bona fide*, uninterrupted meal breaks.

116.    Sparrow knew the Putative Class Members did not actually receive *bona fide*, uninterrupted meal breaks.

117.    Sparrow knew the Putative Class Members regularly worked during their unpaid meal breaks.

13

118.    Sparrow knew it requested, suffered, permitted, or allowed the Putative Class Members to work during their unpaid meal breaks.

119.    Sparrow knew the Puative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for Sparrow's predominant benefit.

120.    Indeed, the Putative Class Members complained to Sparrow's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

121.    Thus, Sparrow knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work during their unpaid meal breaks.

122.    Nonetheless, Sparrow automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

123.    In other words, Sparrow knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Class Members for all the hours they performed compensable work.

124.    Sparrow's decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks was neither reasonable, nor was the decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks made in good faith.

125.    Sparrow's failure to pay the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

126.    Sparrow knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Desgrange and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

127.    Sparrow knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA.

<u>CAUSE OF ACTION</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**

128.     Desgrange incorporates all other paragraphs by reference.

129.     Desgrange brings his FLSA claim on behalf of himself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

130.     Sparrow violated, and is violating, the FLSA by employing non-exempt employees (Desgrange and the Putative Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks.

131.     Sparrow's unlawful conduct harmed Desgrange and the Putative Class Members by depriving them of the overtime wages they are owed.

132.     Accordingly, Desgrange and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**JURY DEMAND**

133.     Desgrange demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Desgrange, individually and on behalf of the Putative Class Members, seeks the following relief:

a.       An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in

this action by filing individual Consents to Sue pursuant to 29 U.S.C. §
216(b);

b.    An Order pursuant to Section 16(b) of the FLSA finding Sparrow liable for
unpaid overtime wages due to Desgrange and the Putative Class Members,
plus liquidated damages in amount equal to their unpaid overtime wages;

c.    Judgment awarding Desgrange and the Putative Class Members all unpaid
wages, liquidated damages, and any other penalties available under the FLSA;

d.    An Order awarding attorney's fees, costs, and expenses;

e.    Pre- and post-judgment interest at the highest applicable rates; and

f.    Such other and further relief as may be necessary and appropriate.

Dated: October 2, 2023.

Respectfully submitted,

**FAGAN MCMANUS, PC**

By: */s/ Jennifer L. McManus*
      Jennifer L. McManus (P65976)
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
Phone: 248-542-6300
jmcmanus@faganlawpc.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Phone: 361-452-1279
Fax: 361-452-1284
clif@a2xlaw.com
austin@a2xlaw.com

*\* Pro hac vice applications forthcoming*

**ATTORNEYS FOR DESGRANGE &
THE PUTATIVE CLASS MEMBERS**